**SO ORDERED.**

**SIGNED this 8 day of July, 2016.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### FAYETTEVILLE DIVISION

IN RE:                                                    CASE NO. 12-09022-8-DMW

**BRADLEY MORTON PHILLIPS**
**SUSANNA G. PHILLIPS**                          CHAPTER 7

        DEBTORS


## ORDER GRANTING MOTION TO AVOID JUDICIAL LIEN
## AND AMENDING PRIOR ORDER AVOIDING JUDICIAL LIEN

This matter comes before the court upon the Motion to Avoid the Fixing of a Lien on Interests of the Debtors in their Residence at 2136 Dr. Kerr Road, Ivanhoe, North Carolina ("Second Avoidance Motion") filed by Bradley Morton Phillips and Susanna G. Phillips ("Debtors") on January 15, 2016 and Creditor McInnis's Objection to Debtors' Motion to Avoid Lien on Property ("Second Objection") filed by Sherrill S. McInnis ("McInnis") on January 31, 2016. The court conducted a hearing ("2016 Hearing") on March 16, 2016 in Raleigh, North Carolina. Dean R. Davis, Esq. appeared for the Debtors, and David Paul Ennis, Esq. appeared for McInnis. Based upon the pleadings, case record, evidence presented, and arguments of counsel, the court makes the following findings of fact and conclusions of law:

## JURISDICTION

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. *Osborne v. Dominion Bank, N.A. (In re Osborne)*, 156 B.R. 188, 189 (Bankr. W.D. Va. 1993), *rev'd on other grounds*, 164 B.R. 183 (W.D. Va. 1994) (finding that a motion to avoid a lien pursuant to 11 U.S.C. § 522(f) is a core proceeding).

2.      The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## BACKGROUND

3.      The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code ("Code") on December 21, 2012 ("Petition Date"). On April 29, 2014 ("Conversion Date"), the Debtors voluntarily converted the case to Chapter 7 pursuant to 11 U.S.C. § 1307(a) and Rule 1017(f)(3) of the Federal Rules of Bankruptcy Procedure, and the court appointed Walter L. Hinson, Esq. ("Trustee") to administer the estate pursuant to 11 U.S.C. § 704.

4.      Pursuant to a General Warranty Deed dated February 25, 2008 and recorded in Book 1699, Page 52, Sampson County Register of Deeds, the Debtors obtained title to real property ("Property") located at 2136 Dr. Kerr Road, Ivanhoe, North Carolina. The Property was the Debtors' residence on the Petition Date and continues to be the Debtors' residence.

5.      On March 31, 2008, the Debtors executed a Note ("Chase Note") in favor of JPMorgan Chase Bank, N.A. ("Chase") in the original principal amount of $164,000.00. The Chase Note is secured by a first priority Deed of Trust ("Chase Lien") upon the Property. The Chase Lien is recorded in Book 1702, Page 803, Sampson County Register of Deeds. As

evidenced by a proof of claim filed by Chase on April 4, 2013, the amount due under the Chase Note on the Petition Date was $153,873.30.

6.      On June 17, 2010, Pages Creek Marine Services, Inc. executed a Note Modification Agreement ("BB&T Note") in favor of Branch Banking and Trust Company ("BB&T") in the original principal amount of $10,222.88.  The Debtors are personally liable on the BB&T Note as guarantors.  The BB&T Note is secured by a second priority Deed of Trust ("BB&T Lien") upon the Property.  The BB&T Lien is recorded in Book 1773, Page 386 and rerecorded in Book 1773, Page 845, Sampson County Register of Deeds.  As evidenced by an amended proof of claim filed by BB&T on October 20, 2014, the amount due under BB&T Note on the Petition Date was $6,798.08.

7.      On December 15, 2011, the Superior Court of New Hanover County, North Carolina, File No. 11-CVS-1987, entered an Order ("McInnis Judgment") which, *inter alia*, granted judgment against the Debtors and in favor of McInnis and Philip[1] K. McInnis, Jr.[2] (collectively referred to as the "McInnises") for the sum of $176,129.45 with interest at a rate of 8% from April 1, 2011 plus $14,610.00 without accrual of interest[3] and attorneys' fees and costs. On November 5, 2012, the McInnis Judgment was transcribed to Sampson County, thereby creating a third priority lien ("Judicial Lien")[4] upon the Property.  As evidenced by a proof of

---

[1] Portions of the McInnis Judgment, including the caption, use the incorrect spelling of "Phillip" instead of "Philip."

[2] Philip K. McInnis, Jr. died on March 8, 2012. "Philip Kilmer 'Buzz' McInnis Jr. Obituary." *Wilmington Star-News.* 9-11 Mar. 2012.

[3] The McInnis Judgment indicates interest accrues on the debt evidenced by a promissory note, but interest does not accrue on the debt resulting from a breach of a lease agreement.

[4] The court notes that the transcription of the McInnis Judgment to Sampson County occurred within 90 days of the Petition Date and appears to be an avoidable preferential transfer pursuant to 11 U.S.C. § 547. The Trustee initiated an adversary proceeding against McInnis seeking avoidance of the Judicial Lien; however, this adversary proceeding was dismissed with prejudice based upon a resolution between the parties that did not involve avoidance of the Judicial Lien as a preferential transfer.

claim filed by McInnis on January 17, 2013, the amount due on the McInnis Judgment on the Petition Date was $248,296.55.[5]

8.      On February 22, 2013, while their bankruptcy case was proceeding under Chapter 13, the Debtors filed a Motion for Determination of Unsecured Status of Claim and for Avoidance of Judgment Lien ("First Avoidance Motion").   In the First Avoidance Motion, the Debtors requested the court to determine that the McInnis Judgment was fully unsecured pursuant to 11 U.S.C. § 506(a)(1), resulting in the Judicial Lien being void pursuant to 11 U.S.C. § 506(d).   In addition, the Debtors asserted that the Judicial Lien should be avoided pursuant to 11 U.S.C. § 522(f), because it impaired the Debtors' homestead exemption allowed under N.C. Gen. Stat. §1C-1601(a)(1).

9.      On March 11, 2013, the McInnises filed an objection ("First Objection") to the First Avoidance Motion.[6]   The court conducted a hearing ("2013 Hearing") on the First Avoidance Motion on March 20, 2013, but neither McInnis nor her counsel appeared in support of the First Objection.[7]   At the 2013 Hearing, Bradley Morton Phillips ("Male Debtor") testified that, based upon an appraisal report dated January 24, 2013, the value of the Property on the Petition Date was $156,000.00.   Counsel for the Debtors also established that the Debtors each claimed a $5,000.00 wildcard exemption pursuant to N.C. Gen. Stat. 1C-1601(a)(2); therefore, they could each claim a $30,000.00 homestead exemption in the Property pursuant to N.C. Gen. Stat. 1C-1601(a)(1), resulting in a total homestead exemption of $60,000.00.   Considering these values in

---

[5] The court's Claims Register for this case reflects the amount of $248,746.55; however, the face of the Proof of Claim gives the amount of $248,296.55.   Pursuant to an agreement between the Trustee and McInnis, McInnis is deemed to have withdrawn her Proof of Claim against the Debtors' estate; however, the Proof of Claim remains valid evidence of the amount due under the McInnis Judgment on the Petition Date.

[6] The First Objection was filed under the names of both of the McInnises even though Philip K. McInnis, Jr. was already deceased.

[7] McInnis's counsel asserted that he did not receive notice of the 2013 Hearing; however, he did not take any action to seek reconsideration of the court's ruling.

conjunction with the values of the Chase Lien, the BB&T Lien, and the Judicial Lien, the court determined that the Judicial Lien was wholly avoidable under either 11 U.S.C. § 506(d) ("§ 506 Avoidance") or 11 U.S.C. § 522(f) ("§ 522 Avoidance"), and the court directed the Debtors' counsel to submit a proposed order granting the requested relief.

10.     On April 18, 2013, the court entered an Order Regarding Motion for Determination of Unsecured Status of Claim and for Avoidance of Judgment Lien ("Avoidance Order") that purported to avoid the Judicial Lien under both 11 U.S.C. § 506(d) and 11 U.S.C. § 522(f) as allowed at the 2013 Hearing.  The Avoidance Order, prepared by the Debtors' counsel, specifically reads as follows:

> Based on the foregoing findings of fact, the Court concludes as a matter of law as follows:
>
> 1.     The Judgment lien of the McInnises totally impairs the residential exemption of the Debtors of $35,000 each to which the Debtors are entitled pursuant to Section 522(b) of the Bankruptcy Code and NCGS Section 1C-1601(a)(1). ["Provision A"][8]
>
> 2.     In addition, the Judgment lien of the McInnises must be avoided pursuant to Section 506(a) and (d) of the bankruptcy code because the fair market value of the Debtors' house is less than the sum of the two deeds of trust in favor of Chase and BB&T.
>
> It is therefore ordered as follows:
>
> 1.     The Judgment lien of Phillip K. McInnis, Jr. and Sherrill S. McInnis (the "McInnises") against the Debtors' home in Ivanhoe, North Carolina, consisting of two acres more particularly described in that warranty deed recorded in Book 1699 at Page 52 of the Sampson County Registry is avoided to the extent of $70,000 pursuant to Section 522(f) of the Bankruptcy Code. ["Provision B"]
>
> 3.     The Judgment lien of the McInnises is declared to be void and shall be removed of record upon the completion of the Chapter 13 Plan of the Debtors and entry of the discharge in this case pursuant to Section 506 of the Bankruptcy Code.

---

[8] In this Order the court has identified certain provisions from the Avoidance Order as Provision A, Provision B and Provision C.  Those identifiers are not contained in the Avoidance Order.

4.      In the event the Debtors fail to complete their Chapter 13 Plan and receive their discharge, the McInnises' lien shall remain unaffected as to Section 506(a) and (d) of the Bankruptcy Code by this order. ["Provision C"]  [sic][9]

11.      On January 15, 2016, the Debtors, presumably acting under the assumption that the Avoidance Order was invalidated by the conversion of their case from Chapter 13 to Chapter 7, filed the Second Avoidance Motion that is currently before the court.  In the Second Avoidance Motion, the Debtors request the court to avoid the Judicial Lien pursuant to 11 U.S.C. §522(f)(1). Unlike with the First Avoidance Motion, the Debtors did not also request a determination that the Judicial Lien is void under 11 U.S.C. § 506(d).

12.      McInnis's Second Objection to the Second Avoidance Motion raises three defenses.

a.      First, McInnis alleges that the Debtors filed the Second Avoidance Motion in violation of an Order Holding Proceeding in Abeyance ("Abeyance Order") entered on August 28, 2015 in an adversary proceeding initiated by McInnis against the Debtors.  The Abeyance Order suspended that adversary proceeding pending the outcome of a related state court action between the parties.

b.      Next, McInnis asserts that the Avoidance Order was a final order, thereby barring subsequent litigation of the same causes of action under the doctrines of *res judicata* and collateral estoppel.  Specifically, McInnis contends that because Provision C of the Avoidance Order conditions the § 506 Avoidance upon the Debtors completing their Chapter 13 plan and obtaining a discharge, which the Debtors did not do, the Debtors cannot again ask for avoidance of  the Judicial Lien under 11 U.S.C. § 522(f).

---

[9] This language from the Avoidance Order is quoted verbatim.

c.      Finally, McInnis contends that the Second Avoidance Motion is also barred by the doctrine of laches, because it was filed almost two years after the Conversion Date.

13.      At the 2016 Hearing, the Male Debtor and appraiser Justin B. Byrd testified that the value of the Property on the Conversion Date was $162,000.00, and the Debtors' counsel expressed uncertainty as to whether the court should consider the Property's value on the Petition Date or the Conversion Date.  The Debtors asserted that, using either value, the Judicial Lien should be avoided in its entirety under 11 U.S.C. § 522(f).  McInnis presented arguments in support of the defenses raised in the Second Objection, except McInnis abandoned her contention that the filing of the Second Avoidance Motion was in violation of the Abeyance Order, because the court quickly noted that it intended for the Abeyance Order to apply only to the adversary proceeding in which it was entered.[10]

14.      At the conclusion of the 2016 Hearing, the court orally rejected McInnis's argument that the Avoidance Order should be considered *res judicata* when considering the Second Avoidance Motion.  The court referenced 11 U.S.C. § 348(f)(1)(B), which provides that valuations of property in a Chapter 13 case shall not apply if the case is converted to Chapter 7.  After scrutinizing the interplay between 11 U.S.C. § 348 and 11 U.S.C. § 522, the court modifies its opinion.  The court now holds that the Avoidance Order does meet the criteria for preventing litigation of the Second Avoidance Motion under principles of *res judicata*; however, the court cannot agree with McInnis that the § 522 Avoidance was conditioned upon the Debtors completing a Chapter 13 plan and receiving a discharge.  As more fully explained *infra*, the Avoidance Order clearly establishes that these conditions only applied to the § 506 Avoidance; therefore, the

---

[10] The Abeyance Order provides that "*[t]his Adversary Proceeding* should remain in abeyance until the NCCOA rules on the State Court Action appeal or until the Trustee's Action has been resolved." (emphasis added)

7

Avoidance Order, as amended by this Order, remains effective and enforceable as to the § 522 Avoidance.

DISCUSSION

Amendment of Avoidance Order

15.    Before addressing the issues presented in the Second Avoidance Motion and the Second Objection, the court will thoroughly analyze the Avoidance Order, because the implications of the Avoidance Order directly affect the *res judicata* defense presented by McInnis. At the 2016 Hearing, the court orally opined that the Avoidance Order was not "artfully drawn." The court subsequently reviewed the Avoidance Order in concert with an audio recording of the 2013 Hearing and is convinced that the Avoidance Order does not accurately reflect the court's ruling.[11]

16.    Pursuant to 11 U.S.C. § 105(a)[12] in conjunction with Rule 60(b) of the Federal Rules of Civil Procedure,[13] made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure, "bankruptcy courts, as courts of equity, have the power to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders." *Meyer v. Lenox (In re Lenox)*, 902 F.2d 737, 739-40 (9th Cir. 1990); *accord In re Renaissance Stone Works, L.L.C.*, 373 B.R. 817, 822 (E.D. Mich. 2007) (holding that bankruptcy courts have inherent power and authority under 11 U.S.C. § 105(a) to *sua sponte* reconsider, modify or vacate orders previously entered); *Marchand v. Waters (In re Waters)*, 2007 WL

---

[11] When reviewing a proposed order prepared and submitted by counsel, the court and its staff make great efforts to ensure that the order properly sets forth the applicable law and the court's intentions; however, the review procedure is not infallible, and an inaccurately worded order may occasionally be entered.

[12] This statute provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

[13] Rule 60(b) enumerates grounds for relief from a final judgment, order, or proceeding.

3069326, at *3 (Bankr. D.N.J. Oct. 18, 2007) (holding that bankruptcy courts have independent authority, pursuant to 11 U.S.C. § 105 and Rule 9024 of the Federal Rules of Bankruptcy Procedure, to reconsider *sua sponte* their own orders at any time).  Using its equitable powers authorized by 11 U.S.C. § 105(a), the court amends the Avoidance Order to correct the errors which are described below:

> a.    Provision A of the Avoidance Order should be modified to change the homestead exemption amount from $35,000.00 to $30,000.00 for each Debtor, because at the 2013 Hearing, the Debtors established that they would each be entitled to claim only a $30,000.00 homestead exemption due to each having claimed a $5,000.00 wildcard exemption.[14]

> b.    Provision B of the Avoidance Order incorrectly orders that the Judicial Lien is only avoided *to the extent of* the combined homestead exemption of $70,000.00 [sic].[15] At the 2013 Hearing, the court clearly contemplated that the *entire* Judicial Lien was avoidable under 11 U.S.C. § 522(f)(1), and an analysis of the values presented to the court confirms that the Judicial Lien is fully avoidable under this statute.

> > i.    Section 522(f)(1) provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled [under N.C. Gen. Stat. 1C-

---

[14] In North Carolina, each individual debtor is entitled to claim a maximum "homestead exemption" of $35,000.00 pursuant to N.C. Gen. Stat. § 1C-1601(a)(1).  Pursuant to N.C. Gen. Stat. § 1C-1601(a)(2), the debtor can apply any unused amount of the homestead exemption up to $5,000.00 to claim a "wildcard exemption" in any property.  Any amount claimed as a wildcard exemption necessarily reduces the maximum allowed homestead exemption by that amount. *See, e.g.*, *In re Stanley*, 2010 WL 2103441 at *1 n 1 (Bankr. M.D.N.C. May 20, 2010) (finding that a debtor's available wildcard exemption was limited to any available amount not claimed under a homestead exemption).

[15] As a result of the court's amendment of Provision A to reflect a combined homestead exemption of $60,000.00, this figure is also incorrect.

1601],[16] if such lien is a judicial lien . . ." 11 U.S.C. § 522(f)(1)(A).  This wording historically caused significant debate among courts regarding whether a lien greater than available exemptions could be avoided, but in 1994 Congress clarified the meaning by adding a formula for computing impairment:

> For purposes of [11 U.S.C. § 522(f)], a lien shall be considered to impair an exemption to the extent that the sum of—
>
> (i) the lien;
>
> (ii) all other liens on the property; and
>
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

ii.    "Under Congress's formula, a judicial lien may be avoided notwithstanding the fact that the amount of the lien exceeds the dollar amount of the applicable exemption." *In re Hemric*, 333 B.R. 81, 83 (Bankr. M.D.N.C. 2005); *see also In re McQueen*, 196 B.R. 31, 33 (E.D.N.C. 1995) (interpreting the legislative history of the 1994 amendment to 11 U.S.C. § 522(f) to mean "that the statute was originally intended to provide a debtor the opportunity to avoid a judicial lien in a residence without regard to the debtor's monetary interest in that residence"); *In re Male*, 362 B.R. 238, 242 (Bankr. E.D.N.C. 2007) (finding that

---

[16] "The exemptions provided in The Bankruptcy Code, 11 U.S.C. § 522(d), are not applicable to residents of [North Carolina].  The exemptions provided by this Article and by other statutory or common law of this State shall apply for purposes of The Bankruptcy Code, 11 U.S.C. § 522(b)."  N.C. Gen. Stat. § 1C-1601(f). *See In re Connor*, 419 B.R. 304, 306 (Bankr. E.D.N.C. 2009) (holding that a debtor is required to claim any exemptions under North Carolina law, because North Carolina is an "opt out" state under 11 U.S.C. § 522(b)); *In re Cain*, 235 B.R. 812, 815 (Bankr. M.D.N.C. 1998) (holding that because North Carolina has opted out of the exemptions provided under 11 U.S.C. § 522(d), the exemptions available for bankruptcy debtors in North Carolina depend upon the law of North Carolina)).

debtors can avoid a judicial lien even though no equity exists in their residence at the time of filing bankruptcy).

iii.     Applying established values as they existed on the Petition Date[17] to the formula set forth in 11 U.S.C. § 522(f)(2)(A), the court computes impairment of the Debtors' exemptions as follows:

| | |
|---|---:|
| Chase Lien | $ 153,873.30 |
| BB&T Lien | 6,798.08 |
| Judicial Lien | 248,296.55 |
| Homestead Exemptions | + 60,000.00 |
| | $ 468,967.93 |
| Value of Property | (156,000.00) |
| Impairment | $ 312,967.93 |

The total amount of impairment is greater than the value of the Judicial Lien; therefore, the entire Judicial Lien was avoided under 11 U.S.C. § 522(f).  The court will amend the Avoidance Order to reflect the full avoidance.

### *Res Judicata* Effect of the Avoidance Order

17.     The court will now consider whether an order entered during a Chapter 13 proceeding upon a motion to avoid a judicial lien under 11 U.S.C. § 522(f) has a *res judicata* effect in the case after conversion to Chapter 7, an issue of first impression for this court.  Under principles of *res judicata*, often referred to as claim preclusion, "a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." *First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.)*, 81 F.3d 1310, 1314-15 (4th Cir. 1996) (citations omitted).  The rules of *res judicata* "apply to the decisions of bankruptcy courts." *Turshen v.*

---

[17] At the 2013 Hearing, the Male Debtor's testimony provided slightly different values for the Chase Lien, the BB&T Lien, and the Judicial Lien than those provided by the creditors in their proofs of claim.  The values presented at the 2013 Hearing reflected insignificant changes of the outstanding indebtedness since the Petition Date.  For reasons set forth *infra*, the Petition Date values set forth in the proofs of claim are the proper figures to use.

*Chapman*, 823 F.2d 836, 839 (4th Cir. 1987) (quoting *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.

Ct. 467, 475, 15 L. Ed.2d 391 (1966)).   Claim preclusion occurs when the following three

conditions are satisfied:

> 1)   the prior judgment was final and on the merits, [sic] and rendered by a court
>      of competent jurisdiction in accordance with the requirements of due
>      process;
> 2)   the parties are identical, or in privity, in the two actions; and
> 3)   the claims in the second matter are based upon the same cause of action
>      involved in the earlier proceeding.

*Varat*, 81 F.3d at 1315 (citing *Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir. 1987)).   The parties to

the First Avoidance Motion and the Second Avoidance Motion are identical—the Debtors and the

McInnises.   In the Second Avoidance Motion, the Debtors are seeking to avoid the Judicial Lien

pursuant to 11 U.S.C. § 522(f).   That pleading duplicates one of the causes of action presented in

the First Avoidance Motion.[18]   The second and third elements of claim preclusion are easily

satisfied, so the court will focus on whether the Avoidance Order is a final judgment on the merits,

thereby barring litigation of the Second Avoidance Motion.

> a.   An order regarding a motion to avoid lien under 11 U.S.C. § 522(f) is

considered a "final order" which can be appealed. *E.g.*, *Ramos v. Ortiz Negron (In re

Ramos)*, 498 B.R. 401, 403 (1st Cir. BAP 2013) (holding that an order denying a § 522(f)

motion is final, because it does not leave anything open for subsequent determination); *see

also Davis v. Davis (In re Davis)*, 314 B.R. 904 (Table), 2004 WL 1950423 at *2 (10th

Cir. BAP Aug. 26, 2004) (holding that an order denying a § 522(f) motion is final, because

it ends the litigation on the merits).   Ostensibly, all the conditions for *res judicata* appear

---

[18] The fact that the First Avoidance Motion also contained an additional cause of action under 11 U.S.C. § 506(d) does not prevent the Second Avoidance Motion from meeting the third condition of claim preclusion.

to be met, but the court must further determine what effect, if any, the conversion of the Debtors' case from Chapter 13 to Chapter 7 has on the finality of the Avoidance Order.

b.      When a case is dismissed, an order avoiding a judicial lien under 11 U.S.C. § 522(f) is essentially vacated, because the dismissal reinstates "any transfer avoided under section 522 . . . ." 11 U.S.C. § 349(b)(1)(B).  The purpose of this provision "is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." HR Rep No. 595, 95th Cong, 1st Sess 338 (1977); S Rep No. 989, 95th Cong, 2d Sess 48-49 (1978).  Orders avoiding liens in Chapter 13 are usually predicated upon the debtor receiving a discharge because of the effects of dismissal. *In re Stroud*, 219 B.R. 388, 390 (Bankr. M.D.N.C. 1997).  The court does not believe that this predication prevents an order avoiding a judicial lien from being a final order for purposes of *res judicata*.  Rather, the order is subject to being statutorily absolved in the event of dismissal.

c.      Section 348 of the Code, which addresses the effects of conversion, does not similarly reinstate an avoided judicial lien; however, the practice in this district has been to condition a judicial lien avoidance in a Chapter 13 proceeding not only upon the case not being dismissed but also not being converted to Chapter 7.[19]  The basis for this supposition is the Code's mandate that "valuations of property and of allowed secured claims in the chapter 13 case shall apply only in a case converted to a case under chapter 11 or 12, *but not in a case converted to a case under chapter 7* . . . ." 11 U.S.C. §

---

[19] Forms provided to the public on the court's website specifically contemplate that an avoided judicial lien "shall have no further force and effect upon the Property, subject to the condition that if [the] case is dismissed or if [the] case is converted to a Chapter 7 proceeding then, pursuant to 11 U.S.C. § 349(b)(1)(B) and 11 U.S.C. § 348(f)(1)(B), respectively, the lien shall remain valid and enforceable and shall continue to encumber the Property." This suggested language was not used in the First Avoidance Motion or the Avoidance Order, and the forms were not available when these documents were prepared.

348(f)(1)(B) (emphasis added).  The avoidance of a lien under 11 U.S.C. § 522(f) necessarily requires a court to determine values of the subject property and claims against that property.  It is a rational assumption that a conversion from Chapter 13 to Chapter 7 would invalidate the valuations and thus the resulting order.  The court previously adhered to that assumption when announcing the ruling after the 2016 Hearing; however, that ruling is modified by this Order.

       d.       Section 348(f) did not originally restrict valuations made in a Chapter 13 proceeding from applying after conversion to Chapter 7, and this restriction was added in 2005 in connection with the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").  The legislative history for this amendment is not very enlightening of Congress's intentions and simply explains that

> [i]f the chapter 13 case is converted to one under chapter 7, then the creditor holding security as of the petition date shall continue to be secured unless its claim was paid in full as of the conversion date.  In addition, unless a prebankruptcy default has been fully cured at the time of conversion, then the default in any bankruptcy proceeding shall have the effect given under applicable nonbankruptcy law.

HR Rep. No. 31, 109th Cong., 1st Sess 309 (2005).  The court interprets this explanation to mean that in a case converted from Chapter 13 to Chapter 7, a secured creditor cannot be deemed worse off than it was on the date of the petition as the result of any cramdown valuations of its claim or collateral modification in a Chapter 13 plan.  While equity suggests that those prior valuations would continue in a case converted to either Chapter 11 or Chapter 12, both of which also provide for payment through a plan, it would be unfair to hold a creditor to these valuations in the event a liquidation generates a greater return.  As similarly stated by a commentator analyzing BAPCPA,

> [t]he meaning of section 348(f)(1)(B) seems to be that, where a chapter 13 plan is converted to some other reorganization chapter, the old valuations hold.   Therefore [sic] the secured creditor does not obtain relief from bifurcation.   Where, however, the chapter 13 plan is converted to chapter 7, bifurcation is entirely repealed.

David Gray Carlson, *Cars and Homes in Chapter 13 After the 2005 Amendments to the Bankruptcy Code*, 14 Am. Bankr. Inst. L. Rev. 301, 385 (2006).   Following this reasoning, restricting valuations made in a Chapter 13 case from applying after a conversion to Chapter 7 pertains more appropriately to modifications of secured claims made pursuant to 11 U.S.C. § 1322(b)(2)[20] or 11 U.S.C. § 506[21] than to avoidances of liens under 11 U.S.C. § 522.   By nullifying Chapter 13 valuations made pursuant to 11 U.S.C. § 506(a) upon conversion of a case to Chapter 7, section 348(f)(1)(B) specifically complies with the United States Supreme Court's holding that a Chapter 7 debtor cannot utilize 11 U.S.C. § 506(d) to strip down a creditor's lien on real property to the value of the property securing the lien. *Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773, 116 L.Ed.2d 903 (1992).

     e.     A finding that 11 U.S.C. § 348(f) does not prevent orders made under 11 U.S.C. § 522(f) during a Chapter 13 proceeding from remaining effective upon conversion of the case to Chapter 7 is further supported by the Code's mandate that for purposes of 11 U.S.C. § 522, "'value' means fair market value *as of the date of the petition* . . . ."   11 U.S.C. § 522(a)(2) (emphasis added).   This provision applies explicitly to property valuations, but it is implicit that the "nature and extent of a debtor's exemption rights [in valued property] are also determined as of the date of the petition." *In re Mayer*, 156 B.R.

---

[20] This provision provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 1322(b)(2).

[21] This section, relied upon as an alternate means of avoidance in the First Avoidance Motion, defines a secured claim as allowable only to the extent of any value in the collateral property to which the creditor's lien can attach.11 U.S.C. § 506(a).   If there is no value to which the lien can attach, then the claim is wholly unsecured, and the creditor's lien is void. 11 U.S.C. § 506(d).

54, 58 (Bankr. S.D. Cal. 1993), *vacated in part on other grounds*, 167 B.R. 186 (9th Cir. BAP 1994). The formula set forth in 11 U.S.C. § 522(f)(2)(A) does not provide an operative date for valuing liens, but the court is persuaded by the United States Bankruptcy Court for the Southern District of California's holding that

> [t]he petition date is the operative date to make *all* § 522(f) determinations. This approach is consistent with *Dewsnup* because it allows a lien creditor to enjoy the increase in value if the lien is not avoided. However, it also preserves the parties' rights as they existed on the petition date to the extent the lien is avoidable under § 522(f). Further, the petition date is the most logical date. The Court must value the residence and the Debtor's entitlement to an exemption on the petition date. As the amount of the liens is relevant to these determinations, it makes sense to value the liens on the same date.

*In re Salanoa*, 263 B.R. 120, 123 (Bankr. S.D. Cal. 2001) (emphasis added). Even if this court were to conclude that conversion from Chapter 13 to Chapter 7 nullified valuations made in connection with an order entered under 11 U.S.C. § 522(f), subsequent valuations made upon a new motion filed in the Chapter 7 proceeding would necessarily be the same, because the date for valuations remains unchanged. This reasoning is the basic rationale of a *res judicata* defense.

      f.     The court also notes that 11 U.S.C. § 348(f)(1)(B) speaks to valuations made "*in* the chapter 13 case" (emphasis added) and does not use the more expansive language of *during* the chapter 13 case. Section 522 applies to all chapters of the Code, and a motion to avoid a judicial lien under 11 U.S.C. § 522(f) can be brought by any individual debtor. Valuations made in connection with such a motion do not relate in any way to the particular chapter of the Code under which that debtor is proceeding, and the court questions whether, once an order is entered either granting or denying the motion based upon the presented

valuations, cause ever exists to *apply* those valuations to any other matter in the case, because the valuations are made under the specific formula in 11 U.S.C. § 522(f)(2)(A).

g.     Finally, the court cannot ignore that the Code's consecutive sections of 11 U.S.C. §§ 348 and 349 are distinctly different as to the effects of conversion and dismissal on an avoidance made under 11 U.S.C. § 522.  While silence is not always indicative of Congressional intent, it "'is generally presumed that Congress acts intentionally and purposely' when it 'includes particular language in one section of a statute but omits it in another.'" *City of Chicago v. Environmental Defense Fund*, 511 U.S. 328, 338, 114 S. Ct. 1588, 1593, 128 L.Ed.2d 302 (1994) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040, 124 L.Ed.2d 118 (1993)).  The court believes that if Congress intended for the conversion of a case to affect an avoidance made under 11 U.S.C. § 522, then Congress would have unambiguously made that statement, notwithstanding the valuation limitations of 11 U.S.C. § 348(f)(1)(B).

18.     The court concludes that the conversion of a case from Chapter 13 to Chapter 7 does not affect the validity of an order entered upon a motion to avoid a judicial lien under 11 U.S.C. § 522(f), and such an order shall remain a final order.  The Avoidance Order, as amended by this Order, remains an enforceable final order, and litigation of the Second Avoidance Motion is barred by the doctrine of *res judicata*.  As similarly stated by the United States Bankruptcy Court for the Eastern District of California, "'the court having entered a final order avoiding Creditors [sic] judgment lien, it cannot now be relitigated by Debtors.  There remains no case or controversy for this court to exercise federal court jurisdiction, all such claims having been merged into the prior final order.'" *Auyeung v. Christensen (In re Auyeung)*, 2015 WL 3609301, at *3 (9th Cir. BAP June 9, 2015) (quoting unpublished lower court opinion issued upon a second motion to avoid

17

judicial lien that asserted new property values after case was converted from Chapter 13 to Chapter 7).

19.     Although the court is now agreeing with McInnis on the *res judicata* issue, the court does not find that the conversion of the case affected the § 522 Avoidance.  McInnis asserts that effectiveness of the entire Avoidance Order was conditioned upon the Debtors completing their Chapter 13 plan and receiving a discharge, but Provision C plainly states that "[i]n the event the Debtors fail to complete their Chapter 13 Plan and receive their discharge, the McInnises' lien shall remain unaffected *as to Section 506(a) and (d) of the Bankruptcy Code by this order*." (emphasis added).  Provision C only limits the § 506 Avoidance, and McInnis's argument that the § 522 Avoidance is now ineffective fails.  The Second Avoidance Motion only seeks avoidance under 11 U.S.C. § 522(f), and the Avoidance Order did not similarly condition the § 522 Avoidance upon the Debtors completing their Chapter 13 plan and receiving a discharge. *Cf. In re Allen*, 217 B.R. 945, 948-49 (Bankr. M.D. Fla. 1998) (holding that "a debtor's ability to utilize § 522(f) to avoid a judicial lien is not dependent upon the debtor receiving a discharge . . . .").

### Collateral Estoppel Inapplicable to Issues Between Identical Parties

20.     McInnis contends that the Second Avoidance Motion should also be barred by the doctrine of collateral estoppel, or issue preclusion, which "is a subset of the *res judicata* genre." *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 326 (4th Cir. 2004).  "Applying collateral estoppel 'forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate.'" *Id.* (quoting *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks and citations omitted)).  Collateral estoppel thus applies when an identical issue was determined

18

in a prior litigation between the party against whom collateral estoppel is asserted and a *different party* from the one asserting collateral estoppel in the subsequent litigation.  The Debtors and McInnis were both parties to the First Avoidance Motion and the Second Avoidance Motion; therefore, the doctrine of collateral estoppel is misplaced, and any issue preclusion between them is encompassed by claim preclusion.

Doctrine of Laches Rarely Prohibits § 522 Avoidance Motions

21.     The court already determined that the Second Avoidance Motion is barred by the doctrine of *res judicata* and need not consider whether the Second Avoidance Motion is also barred by the doctrine of laches, which "is an equitable defense that a creditor may raise to bar the requested relief of a debtor upon a showing that the debtor was guilty of unreasonable delay which prejudiced the creditor." *Male*, 362 B.R. at 242 (citing *Saucier v. Quantum Varde Asset Fund, LLC (In re Saucier)*, 353 B.R. 383, 386 (Bankr. D. Conn. 2006); *Webb v. Boroughs (In re Webb)*, 48 B.R. 454, 458 (Bankr. E.D. Va. 1985)).  Without ruling on this issue, the court notes that exemption rights are liberally construed in favor of debtors, and "[p]assage of time in itself does not constitute prejudice." *Id.* (quoting *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993)); s*ee also Matter of Baskins*, 14 B.R. 110, 111 (Bankr. E.D.N.C. 1981) (holding that debtors are not barred from bringing an avoidance action under 11 U.S.C. § 522(f) after their discharge has been granted); *In re Tarrant*, 19 B.R. 360, 364 (Bankr. D. Alaska 1982) (holding that absent showing that a creditor's position was materially and detrimentally altered, laches does not apply, and "the fresh start policy embodied in the exemptions granted debtors by the Code outweighs any interest in finality which creditors might have").

CONCLUSION

22.     An order either allowing or denying avoidance of judicial lien under § 522(f) is a final order and shall remain valid and enforceable unless the case in which the order was entered is dismissed.  As a result, the doctrine of *res judicata* prohibits relitigation of a subsequent motion brought by the debtor in the same case to avoid the same lien held by the same creditor, even if the motion is made after conversion of the case to another chapter.  Applying this holding to the present case, the Debtors' filing of the Second Avoidance Motion was unnecessary, because the Avoidance Order, as amended by this Order, remains a valid and enforceable order as to the § 522 Avoidance.  The Judicial Lien is already avoided in its entirety pursuant to 11 U.S.C. § 522(f) and, absent dismissal of this case, shall have no further effect upon the Property.

23.     The court's decision means that the Debtors did not need to file the Second Avoidance Motion.  The Debtors were certainly prudent to have filed the Second Avoidance Motion, in light of the court's previous supposition that 11 U.S.C. § 348(f)(1)(B) affects the legitimacy of orders avoiding judicial liens entered during a Chapter 13 proceeding after conversion of the case to Chapter 7.  To avoid any confusion from this prior posture, the court will grant the Second Avoidance Motion; however, the court is not making a new determination under 11 U.S.C. § 522(f) but merely incorporating the § 522 Avoidance as set forth in the amended Avoidance Order; now therefore,

IT IS ORDERED, ADJUDGED, AND DECREED as follows:

1.     The Second Avoidance Motion is granted, because the requested relief is already provided by the Avoidance Order as amended by this Order.

2.     The Avoidance Order is amended and modified as follows:

      a.      Provision A is corrected to state that "[t]he Judgment lien of the McInnises totally impairs the residential exemption of the Debtors of $30,000 each to which the Debtors are entitled pursuant to Section 522(b) of the Bankruptcy Code and NCGS Section 1C-1601(a)(1);" and

      b.      Provision B is corrected to state that "[t]he Judgment lien of Phillip [sic] K. McInnis, Jr. and Sherrill S. McInnis (the "McInnises") against the Debtors' home in Ivanhoe, North Carolina, consisting of two acres more particularly described in that warranty deed of recorded in Book 1699 at Page 52 of the Sampson County Registry is avoided in its entirety pursuant to Section 522(f) of the Bankruptcy Code."

3.      Pursuant to the Avoidance Order, as amended by this Order, the Judicial Lien is avoided in its entirety, and unless the § 522 Avoidance is vacated by a dismissal of the case pursuant to 11 U.S.C. § 349(b)(1)(B), the Judicial Lien shall be canceled of record by the filing of the Avoidance Order and this Order with the Sampson County Register of Deeds.

**END OF DOCUMENT**